## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*ex rel.* VERITY INVESTIGATIONS, LLC,<br><br>     *Plaintiff/Relator*,<br><br>  v.<br><br>MTM CHOICE HOLDINGS LLC;<br>INFINITY MARKETING TEAM, LLC,<br><br>     *Defendants*. | Case No. _____<br><br>**ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.***<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**DO NOT PLACE IN PRESS BOX**<br><br>**Jury Trial Demanded** |

1

### *QUI TAM* COMPLAINT

## I.    INTRODUCTION

1.    This is a *qui tam* case, filed on behalf of the federal government, seeking to recover over $2.2 million (plus mandatory trebling) that Defendants wrongfully obtained in the form of federal guaranteed loans by falsely certifying that they had fewer than 300 employees and that they were not owned by an entity that has significant operations in China. Those loans were later forgiven, and the federal government paid the bill.

2.    The loans in question were provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act." 15 U.S.C. § 636(a)(37).

3.    In early 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans. This case involves false applications for Second Draw PPP loans.

4.    The Second Draw PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[1]

5.    The Second Draw PPP loans created additional criteria that an entity with "significant operations" in the People's Republic of China could not own more than 20 percent of the small business applicant.

---

[1] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

6. Defendants MTM Choice Holdings LLC and Infinity Marketing Team, LLC falsely certified to the SBA that (1) they and their affiliates had 169 and 13 employees, respectively, and (2) that they were not a business concern owned or held by an entity with significant operations in China. As a direct result of those false statements, Defendants obtained Second Draw PPP loans in the amount of $1,996,057 and $242,755, respectively, which were later forgiven.

7. Relator is an outside investigative company that detected Defendants' fraud by reviewing the Defendants' and their affiliates' consolidated financial reports. Those reports demonstrate that Defendants and their affiliates had more than 300 employees during the relevant time period and had a parent with significant operations in China.

II. **THE PARTIES**

8. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

9. Defendant MTM Choice Holdings LLC is a Delaware limited liability company with its principal place of business in New York, New York.

10. Defendant Infinity Marketing Team, LLC is a California limited liability company with its principal place of business in Culver City, California.

III. **JURISDICTION AND VENUE**

11. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

12. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

13. Venue is proper, and this Court has personal jurisdiction over Defendants, because Defendants are "found" in this District. 31 U.S.C. § 3732(a).

## IV.   THE FALSE CLAIMS ACT

14.     The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

15.     A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

16.     Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

17.     In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

18.     Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

19.     No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

20.     The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

21.     The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

4

22.     The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

23.     The FCA imposes treble damages plus a civil penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1).

24.     The minimum and maximum civil penalty amounts are adjusted for inflation each successive year under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701, 129 Stat. 584, 599–601 (2015). *See* 28 C.F.R. § 85.5 (identifying applicable inflation adjustments on an annual basis); 31 U.S.C. § 3729(a)(1).

25.     As of July 3, 2025, courts must assess a civil penalty of no less than $14,308 and no more than $28,619 per claim for FCA violations that occurred after November 2, 2015. *See* 28 C.F.R. § 85.5 Table 1.

26.     False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V.     NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

27.     On information and belief, no "public disclosure" has been made of Defendants' false statements and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

28.    On information and belief, Defendants' fraudulent transactions have not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

29.    Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

30.    Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has "connected the dots" between (a) Defendants' and Defendants' affiliates' consolidated financial reports, and (b) Defendants' false certifications for their Second Draw PPP loans.

31.    Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI.    THE SECOND DRAW PPP LOAN PROGRAM

32.    To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[2] 15 U.S.C. § 636(a)(37)(A)(iv).

---

[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

33.    The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[3] and in the online "Frequently Asked Questions" document available on the website.[4]

34.    The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[5]

35.    The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[6]

36.    The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)" for purposes of the Second Draw loan as well.[7]

37.    That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[8]

38.    That regulation defined affiliation broadly:

   i.    Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other

---

[3] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).

[4] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders (as of March 3, 2021).

[5] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders at 29 (as of March 3, 2021).

[6] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29 (as March 3, 2021).

[7] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[8] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter. by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[9]

ii. Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[10]

iii. Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual. concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[11]

iv. Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated. an

---

[9] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[10] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[11] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[12]

v.  Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[13]

39.  The SBA required borrowers to submit a borrower application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

40.  The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

41.  The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

42.  For the Second Draw PPP loans, Congress stated that "eligible entity . . . does not include . . . any business concern or entity for which an entity . . . that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business

---

[12] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[13] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

9

concern or entity, including as equity shares or a capital or profit interest in a limited liability

company or partnership." 15 U.S.C. § 636(a)(37)(A)(iv)(III)(cc)(AA).

43.    The SBA Form 2483-SD then required the applicant's authorized representative to

certify eligibility by signing a statement that:

> The Applicant is not a business concern or entity (a) for which an entity created in or
> organized under the laws of the People's Republic of China or the Special Administrative
> Region of Hong Kong, or that has significant operations in the People's Republic of China
> or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly,
> not less than 20 percent of the economic interest of the business concern or entity, including
> as equity shares or a capital or profit interest in a limited liability company or partnership;
> or (b) that retains, as a member of the board of directors of the business concern, a person
> who is a resident of the People's Republic of China.

44.    The SBA Form 2483-SD also required the applicant's authorized representative to

initial to "certify that the information provided in this application . . . is true and accurate," and to

acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is

punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more

than five years and/or a fine of up to $250,000 . . . ."

45.    The SBA guaranteed 100% of the outstanding balance of Defendants' Second Draw

PPP loans. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C.

§ 636(a)(2)(F).

## VII.    DEFENDANTS FALSELY CERTIFIED TO THE SBA THEIR COMPLIANCE WITH THE SECOND DRAW PPP LOAN SIZE REQUIREMENTS

### A.    BACKGROUND: DEFENDANTS AND THEIR AFFILIATES

46.    Defendant MTM Choice Holdings LLC ("MTM") is a Delaware limited liability

company with its principal place of business in New York, New York.[14]

---

[14] MTM's Website – About, https://thisismtm.com/about/.

47. MTM can be validly served with process via its registered agent at 1521 Concord Pike, Suite 201, Wilmington, DE 19803.[15]

48. Defendant Infinity Marketing Team, LLC ("Infinity Marketing") is a California limited liability company with its principal place of business at Culver City, California.[16]

49. Infinity Marketing can be validly served with process via its registered agent at 8575 Higuera St, Culver City, CA 90232.[17]

50. Throughout the pandemic period, MTM and Infinity Marketing were majority-owned subsidiaries of Pico Far East Holdings Limited ("Pico"), a holding company located in Hong Kong. Pico primarily engages with business which operate in the provision of exhibition, event and brand activation services.[18]

51. As of October 2019, MTM and Infinity Marketing were 68.8% and 60.0% owned subsidiaries of Pico, respectively.[19]

52. As of October 2020, MTM and Infinity Marketing were 71.0% and 60.0% owned subsidiaries of Pico, respectively.[20]

53. As of October 2021, MTM and Infinity Marketing were 71.6% and 60.0% owned subsidiaries of Pico, respectively.[21]

54. Furthermore, Pico's 2020 annual report lists the majority owned and controlled subsidiaries of Pico as of October 2020, including:[22]

---

[15] Delaware, Division of Corporations, MTM Choice Holdings LLC (File No 6233193), https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx.

[16] Infinity Marketing's Website – Contact, https://www.infinitymarketing.com/contact/.

[17] California, Secretary of State, bizfile Online, Infinity Marketing Team, LLC (File No 201917710005), https://bizfileonline.sos.ca.gov/search/business.

[18] Reuters' Website – About Pico Far East Holdings Ltd (0752.HK), https://www.reuters.com/markets/companies/0752.HK/.

[19] Pico Far East Holdings Limited (SEHK: 752), *Annual Report 2019*, Page 164.

[20] Pico Far East Holdings Limited (SEHK: 752), *Annual Report 2020*, Pages 162-163.

[21] Pico Far East Holdings Limited (SEHK: 752), *Annual Report 2021*, Pages 155-156.

[22] Pico Far East Holdings Limited (SEHK: 752), *Annual Report 2020*, Pages 160-169.

11

i.      A.E. Smith Brand Management (Shanghai) Co., Ltd., located in China;

ii.     A.E. Smith Signs (Guangzhou) Co., Ltd., located in China;

iii.    Beijing Action One Communications Co., Ltd., located in China;

iv.     Beijing Astronaut Culture Communication Co., Ltd., located in China;

v.      Beijing Pico DesignWorks Co., Ltd., located in China;

vi.     Beijing Pico Exhibition Management Co., Ltd., located in China;

vii.    Beijing Pico Exhibition Services Co., Ltd., located in China;

viii.   Camron Public Relations Limited, located in the United Kingdom;

ix.     Dongguan Pico Exhibition Engineering Co., Limited, located in China;

x.      Dongguan Pico Exhibition Services Co., Limited, located in China;

xi.     E3 Information Technology Company Limited, located in China;

xii.    Epicentro Digital Limited, located in Hong Kong;

xiii.   Fairtrans International Ltd., located in Japan;

xiv.    FUTR World Limited, located in the United Kingdom;

xv.     Global International Convention and Exhibition (Tianjin) Company Limited, located in China;

xvi.    Global-Link MP Events International Inc., located in the Philippines;

xvii.   GMC Hong Kong Ltd., located in Hong Kong;

xviii.  GMC Production Limited, located in Hong Kong;

xix.    Guangzhou Pico Exhibition Services Co., Ltd., located in China;

xx.     Guangzhou Pico Plus Services Co., Ltd., located in China;

xxi.    Hydenseek Entertainment Pte Ltd., located in Singapore;

xxii.   Intertrade Lanka Management (Private) Limited, located in Sri Lanka;

xxiii.    Intertrade (Sri Lanka) Pte Ltd., located in Singapore;

xxiv.    Intertrade Services Pte Ltd., located in Republic of Seychelles;

xxv.    Infinity Marketing Team, LLC, located in the United States;

xxvi.    Infinity Pico Asia Limited, located in Hong Kong;

xxvii.    Local Projects, LLC, located in the United States;

xxviii.    Marina Bay Carnival Pte Ltd., located in Singapore;

xxix.    MP Congress and Exhibitions Pte Ltd., located in Singapore;

xxx.    MP International Investments Pte Ltd., located in Singapore;

xxxi.    MP International Pte Ltd., located in Singapore;

xxxii.    MP Singapore Pte Ltd., located in Singapore;

xxxiii.    MTM Choice Holdings LLC, located in the United States;

xxxiv.    Not Ordinary Media, LLC, located in the United States;

xxxv.    P3 Hub Limited, located in Hong Kong;

xxxvi.    Pico Art International Pte Ltd., located in Singapore;

xxxvii.    Pico Concept Limited, located in the United Kingdom;

xxxviii.    Pico Contracts Limited, located in Hong Kong;

xxxix.    Pico Convention and Exhibition (Xi'an) Company Limited, located in China;

xl.    Pico Global Services Limited, located in Hong Kong;

xli.    Pico Hanoi Ltd., located in Vietnam;

xlii.    Pico Ho Chi Minh City Ltd., located in Vietnam;

xliii.    Pico IES Group (China) Co., Ltd., located in China;

xliv.    Pico IES Group Limited, located in Hong Kong;

xlv.    Pico IN-Creative (UK) Ltd., located in the United Kingdom;

xlvi.    Pico International (Henan) Exhibition Services Company Limited, located in China;

xlvii.   Pico International (HK) Limited, located in Hong Kong;

xlviii.  Pico International Interior Fit Out LLC, located in Dubai;

xlix.    Pico International (M) Sdn. Bhd., located in Malaysia;

l.       Pico International (Macao) Limited, located in Macau;

li.      Pico International (LA) Inc., located in the United States;

lii.     Pico International (Oman) LLC, located in Oman;

liii.    Pico International (Qatar) WLL, located in Qatar;

liv.     Pico International Exhibitions and Events Organization LLC, located in Abu Dhabi;

lv.      Pico International Exhibition Services Limited, located in Hong Kong;

lvi.     Pico International LLC (DMCC Branch), located in Dubai;

lvii.    Pico International Ltd., located in Japan;

lviii.   Pico International Taiwan Ltd., located in Taiwan;

lix.     Pico Investments BVI Ltd., located in the British Virgin Islands;

lx.      Pico Myanmar Company Limited, located in Myanmar;

lxi.     Pico North Asia Ltd., located in Korea;

lxii.    Pico Play Sdn Bhd, located in Malaysia;

lxiii.   Pico Play Pte. Ltd., located in Singapore;

lxiv.    Pico Play Pty Ltd., located in Australia;

lxv.     Pico Production Ltd., located in Dubai;

lxvi.    Pico Pro International Limited, located in Hong Kong;

lxvii.    Pico Pro Pte Ltd., located in Singapore;

lxviii.    Pico Projects (International) Limited, located in Hong Kong;

lxix.    Pico-Sanderson JV Pte Ltd., located in Singapore;

lxx.    Pico Services Mumbai Private Limited, located in India;

lxxi.    Pico Sports Cultural and Development Group (Beijing) Ltd., located in China;

lxxii.    Pico TBA Consulting Group (Beijing) Limited, located in China;

lxxiii.    Pico TBA Consulting Group (Shanghai) Limited, located in China;

lxxiv.    Pico Venture Pte Ltd., located in Singapore;

lxxv.    Pico Venue Services Limited, located in Hong Kong;

lxxvi.    Pico World (Singapore) Pte Ltd., located in Singapore;

lxxvii.    PT Pico TBA, located in Indonesia;

lxxviii.    Pudong Pico Exhibition Producer Co., Ltd., located in China;

lxxix.    Seed Communications LLC d/b/a Sub Rosa, located in the United States;

lxxx.    Shanghai Pico Exhibition Management Co., Ltd., located in China;

lxxxi.    Shanghai Pico Exhibition Services Co., Ltd., located in China;

lxxxii.    Shanghai Pico Management Company Limited, located in China;

lxxxiii.    Shanghai Pico Plus Marketing Consulting Ltd., located in China;

lxxxiv.    Shanghai Pixels Information Technology Co., Ltd., located in China;

lxxxv.    Shenzhen Pico Exhibition Services Co., Ltd., located in China;

lxxxvi.    Shenzhen Pico Plus Services Company Limited, located in China;

lxxxvii.    TBA (Indonesia) Pte Ltd., located in Singapore;

lxxxviii.    TBA Creative Co., Ltd., located in Japan;

lxxxix.    Tinsel Limited, located in the British Virgin Islands;

xc.     Total Brand Activation Hong Kong Limited, located in Hong Kong;

xci.    Total Brand Activation Pte Ltd., located in Singapore;

xcii.   UCP Entertainment Pte Ltd., located in Singapore;

xciii.  World Image International Ltd., located in Hong Kong;

xciv.   World Image Plus Pte Ltd., located in Singapore;

xcv.    World Image (China) Company Ltd., located in China;

xcvi.   Yangon Convention Centre Ltd., located in Myanmar; and

xcvii.  Zhuhai Pico Construction Design Company Limited, located in China.

55.    On information and belief, Defendants MTM and Infinity Marketing, and the other entities listed in ¶ 54, *supra*, qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

**B.    MTM'S FALSE STATEMENT TO OBTAIN A SECOND DRAW PPP LOAN**

56.    In 2020, MTM submitted a borrower application for a First Draw PPP loan in the amount of $3,185,270 by lender Webster Bank National Association.

57.    On or about June 11, 2021, the U.S. government forgave 100% of MTM's First Draw PPP loan, plus interest, in the amount of $3,221,311.55.

58.    In 2021, MTM applied for a Second Draw PPP loan.

59.    MTM submitted its borrower application form, SBA Form 2483-SD, to Webster Bank National Association at 137 Bank St, Waterbury, CT 06702.

60.    In its Form 2483-SD, MTM listed its address as 205 E 42nd St Care Of Wework, New York, NY 10017.

61.    In its SBA Form 2483-SD, MTM represented that it and its affiliates had 169 employees—under the 300-employee limit needed to be eligible to apply.

16

62.     MTM's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. MTM and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

63.     MTM deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. MTM signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

64.     Defendant MTM also certified in SBA Form 2483-SD that it was "not a business concern or entity (a) for which an entity . . . that has significant operations in the People's Republic of China . . . owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity . . . ."

65.     Defendant's certification in SBA Form 24-83-SD that it was not a business concern owned or held by an entity that has "significant operations" in China was false. Defendant's parent company has significant operations in China.

66.     Defendant deliberately ignored the fact that its parent company has significant operations in China that made Defendant ineligible for a Second Draw PPP loan. Defendant signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

67.     On or about February 20, 2021, MTM was approved for a Second Draw PPP loan in the amount of $1,996,057 by lender Webster Bank National Association.

68.     The U.S. government paid lender Webster Bank National Association a lender's processing fee of 3% of the $1,996,057 loan, in the amount of $59,881.71.[23]

69.     On or about February 25, 2021, the U.S. government forgave 100% MTM's Second Draw PPP loan, plus interest, in the amount of $2,015,962.88.

---

[23] Paycheck Protection Program (PPP) Information Sheet: Lenders,
https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

17

C.   **INFINITY MARKETING'S FALSE STATEMENT TO OBTAIN A SECOND DRAW PPP LOAN**

70.   In 2020, Infinity Marketing submitted a borrower application for a First Draw PPP loan in the amount of $263,300 by lender Citibank, N.A.

71.   On or about December 22, 2020, the U.S. government forgave 100% of Infinity Marketing's First Draw PPP loan, plus interest, in the amount of $264,887.11.

72.   In 2021, Infinity Marketing applied for a Second Draw PPP loan.

73.   Infinity Marketing submitted its borrower application form, SBA Form 2483-SD, to Citibank, N.A. at 5800 S. Corporate Place, Sioux Falls, SD 57108.

74.   In its Form 2483-SD, Infinity Marketing listed its address as 8575 Higuera St. Culver City, CA 90232.

75.   In its SBA Form 2483-SD, Infinity Marketing represented that it and its affiliates had 13 employees—under the 300-employee limit needed to be eligible to apply.

76.   Infinity Marketing's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. Infinity Marketing and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

77.   Infinity Marketing deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Infinity Marketing signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

78.   Defendant Infinity Marketing also certified in SBA Form 2483-SD that it was "not a business concern or entity (a) for which an entity . . . that has significant operations in the People's Republic of China . . . owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity . . . ."

18

79. Defendant's certification in SBA Form 24-83-SD that it was not a business concern owned or held by an entity that has "significant operations" in China was false. Defendant's parent company has significant operations in China.

80. Defendant deliberately ignored the fact that its parent company has significant operations in China that made Defendant ineligible for a Second Draw PPP loan. Defendant signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

81. On or about March 2, 2021, Infinity Marketing was approved for a Second Draw PPP loan in the amount of $242,755 by lender Citibank, N.A.

82. The U.S. government paid lender Citibank, N.A. a lender's processing fee of 5% of the $242,755 loan, in the amount of $12,137.75.[24]

83. On or about November 5, 2021, the U.S. government forgave 100% of Infinity Marketing's Second Draw PPP loan, plus interest, in the amount of $244,380.11.

## D. EVIDENCE OF NUMBER OF EMPLOYEES

84. In its SBA Form 2483 and SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

85. Pico's 2019, 2020 and 2021 annual reports indicate that Defendants' corporate group collectively employed over 2,500, 2,200, and 2,000 employees respectively as of October 31, 2019, October 31, 2020 and October 31, 2021.[25]

---

[24] Paycheck Protection Program (PPP) Information Sheet: Lenders,
https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

[25] Pico Far East Holdings Limited (SEHK: 752), *Annual Report 2019*, Page 16; Pico Far East Holdings Limited (SEHK: 752), *Annual Report 2020*, Page 8; Pico Far East Holdings Limited (SEHK: 752), *Annual Report 2020*, Page 6.

86.     If Defendants MTM and Infinity Marketing had counted their affiliates' employees in their Second Draw PPP loan applications, they would have reported far more than 300 employees.

87.     On information and belief, Defendants' and their affiliates' payroll records from 2019, 2020, and 2021 will confirm what Defendants always knew—that Defendants and their affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

E.     **EVIDENCE OF SIGNIFICANT OPERATIONS IN CHINA**

88.     Defendants MTM and Infinity Marketing are majority owned and controlled by Pico.

89.     Pico's 2020 annual report indicates that, as of October 2020, Pico had 15 majority-owned and controlled subsidiaries in Hong Kong and 29 majority-owned and controlled subsidiaries in China, as listed above in ¶ 54, *supra*.

90.     Pico is publicly traded on the Hong Kong Stock Exchange (SEHK: 752), and its principal place of business is located at Pico House, 4 Dai Fu Street, Tai Po Industrial Estate, New Territories, Hong Kong in 2020.[26]

91.     Thus, Defendants' parent has significant operations in China, thereby disqualifying Defendants from the Second Draw PPP loan program.

## FIRST CAUSE OF ACTION

### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

92.     Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

---

[26] TIKR TERMINAL, *Pico Far East Holdings Limited (SEHK: 752)*, Filings, https://app.tikr.com/stock/filings?cid=4272760&tid=25960217&ref=gz43j8; Pico Far East Holdings Limited (SEHK: 752), *Annual Report 2020*, Page 29.

93. Each Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lenders claims for approval of a Second Draw PPP loan.

94. Defendants' knowingly false claims in their SBA Form 2483 and/or SBA Form 2483-SD were material to the lenders' decisions to issue the Second Draw PPP loans and were material to the SBA's decisions to forgive those loans and repay the lenders.

95. But for Defendants' knowingly false claims, the lenders would not have issued the loans, and the SBA would not have forgiven them.

96. The Second Draw PPP loans that Defendants obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

97. The Second Draw PPP loans that Defendants obtained was money that the Government effectively and in practice provided to the lenders, by means of the Government's 100% guarantee to the lenders of repayment by the Government in the case of default by the borrowers.

98. The Government later reimbursed the lenders 100% of the amounts of Defendants' Second Draw PPP loans, with interest.

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

99. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

100. Each Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made false records and statements—namely, their SBA Form 2483-SD and their

21

included certifications—to support false claims submitted to the lender for approval of a Second Draw PPP loans.

101.   Each Defendants' knowingly false records and statements were material to the lenders' decisions to issue the Second Draw PPP loans and were material to the SBA's decisions to forgive the loans and repay the lenders.

102.   But for Defendants' knowingly false records and statements, the lenders would not have issued the loans, and the SBA would not have forgiven them.

## THIRD CAUSE OF ACTION

### Improperly Avoiding an Obligation to Pay or Transmit Money
### 31 U.S.C. § 3729(a)(1)(G)

103.   Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

104.   Defendants violated 31 U.S.C. § 3729(a)(1)(G) by knowingly and improperly avoiding Defendants' obligation to pay or transmit money to the SBA—namely, the money Defendants received from the SBA in forgiveness for Defendants' Second Draw PPP loans.

105.   Defendants knew they improperly received money from the SBA when the SBA forgave Defendants' Second Draw PPP loans.

106.   Defendants had an obligation to pay back the SBA the full amount Defendants received in forgiveness of the Second Draw PPP loans.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendants for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven Second Draw PPP loans and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed

22

under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Date: March 30 , 2026

Respectfully submitted,

Steven M. Shepard
Stephen Shackelford, Jr.
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshepard@susmangodfrey.com
sshackelford@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*

23